NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY, | : : : | Hon. Dennis M. Cavanaugh<br><br>**OPINION** |
| Plaintiff, | : : | Civil Action No. 08-CV-1323 (DMC)(JAD) |
| v. | : : | |
| TOTAL SYSTEMS, INC., and TOTSYS, INC.. | : : : | |
| Defendant. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion for summary judgment by Transamerica Life Insurance Company, successor to Transamerica Occidental Life Insurance Company, ("Transamerica" or "Plaintiff") and a cross motion for summary judgment by Total Systems, Inc. and Totsys Inc. (collectively "Defendants") pursuant to Fed. R. Civ. P. 56. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After considering the submissions of the parties, the decision of this Court upon each of these motions is set forth for the reasons herein expressed separately below.

**I.   BACKGROUND**[1]

Transamerica seeks to recover $1,978,418.11 that it allegedly overpaid to Defendants as death benefits under an individual life insurance policy (the "Policy") issued on the life of Robert Hendrickson ("Hendrickson").

---

[1] The facts set-forth in this Opinion are taken from the Parties' statements in their respective moving papers.

On or about December 28, 1999, Daniel Devine ("Devine") and Hendrickson, the principals of Total Systems, Inc. (the "Corporation"), applied for life insurance policies on each other's lives with the Corporation named as the beneficiary. The applications sought coverage from Transamerica in the amount of $2,000,000. JB Hanauer submitted applications to Transamerica through the Selario Agency. The stated purpose of the policy was to fund the purchase of any stock in the Corporation still owned by Hendrickson at the time of his death, pursuant to a buy-sell agreement between Hendrickson and one or more of the Defendants.

Transamerica approved Devine's policy for issuance on June 30, 2000. Transamerica approved Policy 41776405 for Hendrickson on July 6, 2000. Both policies had a face amount of $2,000,000 and required annual premium payments of $2,390. Transamerica sent both policies to Selario Agency for delivery to Devine and Hendrickson. Steven Vitale ("Vitale"), an insurance broker at JB Hanauer, delivered Devine's policy on or about August 30, 2000. Vitale returned Policy 41776405, insuring Hendrickson, to Transamerica with instructions to reissue with an aviation exclusion.

The Policy is alleged to have included an Aviation Exclusion Endorsement providing for reduced payout in the event that Hendrickson died "as a result of operating, riding in or descending from any kind of aircraft while . . . a crew member of that aircraft." Defendants deny the Policy contained an Aviation Exclusion Endorsement. Defendants do not have the original Policy. Transamerica has produced the Life Policy Invoice, which was automatically generated and printed at the same time as the policy and is a precise record of each of the forms, amendments, and endorsements contained within the referenced policy. Only the forms, amendments, and endorsements that actually print with the policy are reflected on the Life Invoice Policy. When the

2

policy and Life Invoice Policy are printed, the documents were bound and sent to the appropriate Transamerica agent for delivery to the policy owner. The Life Invoice Policy for Hendrickson contains several references to the Aviation Exclusion Endorsement.

Hendrickson died while piloting a private airplane in Alaska on or about August 6, 2007. On November 5, 2007, a claims examiner for Transamerica paid $2,003,888.36 in death benefits to Defendants. Because Hendrickson died as a result of an airplane crash while piloting the aircraft, however, Transamerica alleges that the Aviation Exclusion Rider required payment of only $25,470.25. On January 2, 2008, a Transamerica claims examiner advised Defendants of the error and requested return of the overpayment. Defendants have refused to return the alleged overpayment.

## II.   STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." See Celotex Corp., 477 U.S. at 323. "This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id. at 330.

"In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party." Newsome v.

Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. Appx. 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

While a court must draw reasonable inferences, the non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. See FED. R. CIV. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Additionally, "unsupported allegations in memorandum and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). Likewise, conclusory allegations are insufficient to establish genuine issues of fact. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 902 (1990). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586.

**III.   DISCUSSION**

A.  Restitution

Restitution is an available remedy for an insurance company seeking recovery of payments made under a unilateral mistake of fact in the absence of detrimental reliance. See Great Am. Ins. Co. v. Yellen, 58 N.J. Super. 240, 244 (App. Div. 1959); Villanueva v. Amica Mut. Ins. Co., 374 N.J. Super. 283, 289 (App. Div. 2005). "It is the general rule that one who has paid money under a mistake of fact but for which payment would not have been made may have restitution from the payee notwithstanding that the mistake was unilateral and a consequence of

4

the payor's negligence, providing, however, that such restitution will not prejudice the payee." Great Am. Ins. Co., 58 N.J. Super. at 244. Indeed, courts have found that even the lack of care on the insurer's part will not bar an award of restitution. See Villanueva, 274 N.J. Super. at 289 (noting that ordinary negligence will not bar relief so long as the insurer has met its duty of good faith and fair dealing). However, "there is a well-defined exception, sometimes described as 'assumption of the risk,' in cases where the insurance company deliberately elects to make payment of a claim on a policy although it is conscious that it does not know all the facts material to its liability to the payee." Great Am. Ins. Co., 58 N.J. Super. at 245.

At issue in this case is whether the Defendants were paid that which they were entitled under the provisions of the Policy, or whether Transamerica mistakenly overpaid Defendants and therefore is entitled to restitution; the answer depends on whether or not the Policy included an Aviation Exclusion Endorsement.

Transamerica argues that not only did the Policy include an Aviation Exclusion Endorsement, but Defendants specifically requested it. In support of their argument, Transamerica states that the initial policy issued for Hendrickson was rejected because he had begun taking flying lessons; Defendants subsequently inquired as to the premiums required to issue the Policy without an Aviation Exclusion Endorsement, but chose to purchase the Policy with the exclusion because the alternative was too expensive. Transamerica also produced the Life Policy Invoice, which is the *only* available record of the original policy. The Life Policy Invoice, which was automatically generated at the same time of the Policy and includes precise records of the forms, endorsements and riders contained in a policy, explicitly states that the insurance policy was issued with the Aviation Exclusion Endorsement. In fact, an Aviation

Exclusion is referenced several times in the Life Policy Invoice.

Given the foregoing, Transamerica has satisfied its burden of production in proving the Policy contained an Aviation Exclusion.  As stated above, once the moving party satisfies its initial burden of production, which Transamerica has, the burden then shifts to the non-moving party.  See Celotex, 477 U.S. at 330.  Defendants have not satisfied this burden, despite offering several arguments against finding the Policy included an Aviation Exclusion,.  Defendants argue that the premium differential between Devine and Hendrickson's life insurance policies demonstrate that there was no Aviation Exclusion.  However, the premium differentials actually reflect the fact that Devine's policy was issued under 1999 rates, while Hendrickson's Policy was issued under 2000 rates.  Defendants also try to use the very fact of over payment as proof that the Policy did not include an Aviation Exclusion, but this reasoning is circular at best.  Additionally, Defendants offer the deposition testimony of Anthony DaCruz, an insurance agent, in support of Defendants position that they did not intend for the Policy to have an Aviation Exclusion, nor were they aware the Policy contained one.  However, DaCruz provides contradictory testimony as he also indicates that JB Hanauer's file indicates Defendants intended and expected an Aviation Exclusion, and DaCruz expected JB Hanauer to accurately reflect the intention of the Defendants.  Most importantly, Defendants have not produced any evidence refuting the accuracy of the Life Policy Invoice or establishing that Hendrickson's Policy was issued without an Aviation Exclusion Endorsement.  Defendants have not been able to produce the original policy, nor can they recall what was included in the original policy beyond their bare allegations that the Policy did not have an Aviation Exclusion.

Based on the circumstances surrounding the application, issuance, and delivery of the

Policy; the Life Policy Invoice, which was automatically generated simultaneously with the original policy and clearly indicates the Policy includes an Aviation Exclusion; and the lack of evidence refuting the fact the Policy was issued with an Aviation Exclusion; this Court finds that the Policy was issued with an Aviation Exclusion Endorsement.  This Court also finds that based on the Aviation Exclusion Endorsement, Transamerica should have only paid $25,470.25 to Defendants, but, based on Transamerica's unilateral mistake, overpaid $1,978,418.11.

Since this Court finds that the overpayment of $1,978,418.11 was paid to Defendants due to a unilateral mistake by Transamerica, restitution is appropriate unless Defendants would be unduly prejudiced.[2]  "It is considered unjust enrichment to permit the recipient of money paid under mistake of fact to keep it, unless the circumstances are such that it would be inequitable to

---

[2]Defendants make two additional arguments as to why restitution is inappropriate. Though these arguments are based on situations factually distinct from the present case, and none of these arguments are availing, the Court will briefly address these arguments.  First, Defendants argue that Transamerica cannot recover the payments made under a unilateral mistake because they have not proven Defendants, as payees, committed any fraud.  Defendants support their argument by citing a series of cases requiring fraud or other culpable conduct for the rescission or reformation of a contract.  See e.g., Intertech Assocs., Inc. v. City of Paterson, 255 N.J. Super. 52 (App. Div. 1992) (rescission); Heake v. Atlantic Cas. Ins. Co., 15 N.J. 475 (1954) (reformation). However, these cases are inapposite as Transamerica is seeking *restitution,* not rescission or reformation of the Policy.  As discussed above, the restitution of monies paid under a mistake of fact as to the extent of the Policy's coverage does not contemplate culpable conduct by the payee.
    Second, Defendants argue that Transamerica cannot recover the monies paid because it voluntary paid the money while it was aware that it did not have all the facts.  This argument is equally unavailing as that exception is inapplicable based on the facts of this case. Although mistaken as to what the facts actually were (i.e. that the Policy contained an Aviation Exclusion Endorsement), Transamerica believed it was acting with full knowledge of the pertinent facts. Transamerica did not deliberately elect to make a payment while being aware it did not have full knowledge of all the facts relevant to its liability.  Transamerica may have been negligent in making the payment, but there is no evidence supporting Defendants theory that Transamerica voluntarily paid the claim when it was aware it did not have the facts.  Therefore, this exception to the general rule that a party may recover proceeds paid based on a unilateral mistake is inapplicable in the instant case.

require its return." PaineWebber, Inc. v. Levy, 293 N.J. Super. 325, 328 (App. Div. 1995); see also Villanueva, 375 N.J. Super. at 289 (stating that even though payee "has been enriched mistakenly at the expense of the paying party, equity will not unfairly force the payee to disgorge any profit to where that would be to the payee's detriment.").

"In order to defeat an action for restitution due to prejudice, the payee's change in circumstances must be detrimental to the payee, material and irrevocable and such that the payee cannot be placed in the status quo." PaineWebber, Inc., 293 N.J.Super. at 328. "Prejudice to the payee does not occur when the payee has used the money to cover ordinary living expenses or to pay preexisting debt." Id. Nor can the payee defeat restitution by showing he has not retained the value of the monies paid. Id. at 329. "This view of prejudice would lead to unjust enrichment." Id. at 328-29. However, "the payee is not required to make restitution, if, by reason of the mistaken payment, he has assumed liabilities and obligations that he *would not otherwise have assumed*." Id. at 328 (emphasis added). "The payee is prejudiced when he incurs new debts or extraordinary living expenses in good faith reliance upon his right to the overpayment." Id. "The payee must prove that *but for* the mistaken overpayment he would not have incurred these costs or liabilities." Id. (emphasis added). "The burden of proving a change of circumstances or other inequities sufficient to bar restitution is *upon the payee*." Villanueva, 375 N.J. Super. at 289 (emphasis added).

Defendants have failed to prove prejudice. Defendants state that "months prior, in anticipation of the payment, the Defendants substantially changed their position, having spent the proceeds on additional expansion of the business, including additional labor, capital expenses, and a lease for additional space and additional office related expenditures." Devine Aff. p. 11.

8

Defendants also argue that as a result of the "substantial expenditures" undertaken, Defendants would suffer a "major hardship" if required to repay the money. Id. Defendants state that they have "incurred obligations in excess of $2,420,000." Def. Br. Opp. p. 13. It is not enough for Defendants to simply state that they have not retained the value of the monies paid, have incurred debts, or would suffer hardship if forced to repay the money. See Paine Webber, Inc., 293 N.J. Super. at 328-29. The burden is on the defendants to prove that *but for* the mistaken overpayment they would not have incurred these costs or liabilities. Id. at 328. Defendants also state that "the recession has negatively impacted their revenue stream." Def. Br. Opp. p. 13. The state of the economy, and its effect on Defendants, has no bearing on whether the Defendants would be prejudiced because the recession would negatively impact their business regardless of the overpayment, and it cannot be said that such negative effects would not have occurred but for the overpayment by Transamerica.

     Aside from these conclusory statements, Defendants have offered no evidence showing that they would not have undertaken the expansion of the business *but for* the payment by Transamerica. For example, although Defendants state they have incurred debts in excess of $2,400,000, they have offered little evidence as to what these new debts are (i.e., whether they are due to business expansion or ordinary expenses, etc.), nor has there been evidence showing the business expansion was only undertaken based on Defendants' reliance on the overpayment. In fact, Defendants stated that they undertook the business expansion "months prior" to payment; however, the evidence shows that the claim was approved the same day the payment was made. Because Defendants acted prior to the approval of their claim, it cannot reasonably be found that Defendants undertook liabilities they would not have otherwise assumed. All that Defendants

have offered to prove prejudice are a few conclusory statements. Therefore, this Court finds that Defendants have not met their burden and restitution is appropriate.

Transamerica has demonstrated that there are no genuine issues of material fact with regard to whether the Policy included an Aviation Exclusion Endorsement, and whether the overpayment of $1,978,418.11 was paid to Defendants due to a unilateral mistake. Defendants have not been able to produce more than a "mere scintilla of evidence in support of the [Defendant]'s position," Anderson, 477 U.S. at 252, that the Policy was issued without the Aviation Exclusion and/or that restitution is inappropriate. Nor have Defendants been able to show that there is more than "some metaphysical doubt as to the material facts" Matsushita Elec. Indus. Co., 475 U.S. at 586, to preclude a finding of summary judgment. Therefore, this Court finds that Transamerica is entitled to judgment requiring restitution from Defendants of $1,978,418.11, representing life insurance benefits paid in error, as a matter of law.

B.  Waiver and Estoppel

Defendants argue that, even assuming the Aviation Exclusion Endorsement was included in the Policy, Transamerica is not entitled to restitution and that Defendants should be granted summary judgment on the basis of the doctrines of waiver and estoppel.

At the outset, the Court notes that neither waiver nor estoppel can be used to expand coverage that is specifically and unambiguously excluded from the policy language. See Greenberg & Covitz v. National Union Fire Ins. Co. of Pittsburgh, 312 N.J. Super. 251, 264 (App. Div. 1998). "A loss which is not within the coverage of a policy cannot be brought within such coverage by invoking the principles of waiver or estoppel." Id. "Waiver or estoppel can

only have a field of operation when the subject-matter is within the terms of the contract. No one, we assume, would argue that a policy of insurance, which protected one against loss by fire, could be extended or broadened, by the application of the principle of waiver or estoppel, to cover loss by cyclone. The effect, in such a case, would be to create a new contract, without a new consideration." Id.

This Court has already found that the Policy included an Aviation Exclusion Endorsement. By arguing that Transamerica is estopped from disavowing coverage and/or has waived its right to recover the proceeds it overpaid, Defendants are seeking to have this Court expand the coverage of the Policy. Such expansion based on the principles on estoppel and waiver is impermissible.

**IV.** **CONCLUSION**

In accordance with the foregoing, Plaintiff's motion for summary judgment is **granted**, and Defendants' motion for summary judgment is **denied**. An appropriate Order accompanies this Opinion.

    S/ Dennis M. Cavanaugh
    Dennis M. Cavanaugh, U.S.D.J.

Date:    March 31, 2011
Orig.:    Clerk
cc:    Counsel of Record
        The Honorable Joseph A. Dickson, U.S.M.J.
        File